IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Edward "Eddie" Acevedo, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 18 C 293 |
| | ) | |
| The Cook County Officers Electoral Board et al., | ) | Judge Bucklo |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

The defendants, the Illinois State Board of Elections and its members (the State defendants), by their attorney, Lisa Madigan, Attorney General of Illinois, submit the following reply memorandum in support of their motion to dismiss.

**ARGUMENT**

The standard on a motion to dismiss is whether the plaintiffs have alleged sufficient facts that make the claim "plausible" under the correct legal standard. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). That is, the obligation is to plead facts suggesting a right to relief beyond the speculative level. *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011).

Plaintiffs have alleged (we simplify slightly) that they needed 0.5% of the prior vote in that election district to get on the primary ballot; that for the March 2018 primary election as Democrats, this translated to approximately 8,000 petition signatures for offices in Cook County and the Water Reclamation District; that the 8,000 exceeds the 5,000 needed for major party candidates seeking to get on the primary ballot for statewide office; and that this disparity

constitutes a *per se* rule of unconstitutionality. This claim, based on these numerical facts and nothing else, fails as a matter of law. The following discussion attempts to recapitulate in summary form the points already discussed in the preliminary injunction phase of the case and in defendants' motion to dismiss.

      Under *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173 (1979), members of new political parties and candidates seeking to run for statewide office had to obtain 25,000 signatures to appear on the ballot in statewide elections. But in smaller subdivisions, where the number of petitions needed was 5% of the number of voters who voted in that subdivision, the percentage translated to more than 25,000. The Court found that the state could not justify a state interest requiring more than 25,000 signatures in a political subdivision if 25,000 sufficed for a statewide election.

      *Socialist Workers Party* may supply the legal standard when signature totals using a percentage requirement exceed 25,000 in a political subdivision, but it does not supply the rule of decision when dealing with the far lower totals required in this case. Our Court of Appeals has ruled that there is no *per se* rule that the signature total for a larger unit of government must always exceed the signature total for a smaller unit of government. In *Bowe v. Board of Election Commissioners of City of Chicago,* 614 F.2d 1147 (7th Cir. 1980), a disparity similar to the one here was present. Candidates for ward committeeman in the City of Chicago had to submit signatures of at least 10% of the primary electors of his party in that ward, a number which translated to anything from 834 to 2,280. By contrast, a State Central Committeeman, covering the area of a congressional district with a larger population than a Chicago ward, only needed 100 signatures to qualify for the ballot. The court rejected the argument derived from *Socialist Workers Party*: "The plaintiffs apparently take the position that the *Socialist Worker's Party* case

stands for the broad proposition that a state may never impose a higher signature requirement for an office of a smaller subdivision than the requirement for an office of a larger subdivision. We cannot agree." *Id.* at 1151. *See also Gjersten v. Board of Election Commissioners*, 791 F.2d 472, 477 (7th Cir. 1986). This court has already rejected the plaintiffs' basic statistical argument when ruling on the TRO/preliminary injunction. The court found that it takes more than "dogged reliance" on an expansive reading of *Socialist Workers Party* to show that the signature requirement is unconstitutional. Memorandum opinion at 11 (Doc. 17). Plaintiffs' response to the motion to dismiss continues this "dogged reliance" and does not add anything beyond what has already been so far unsuccessfully argued.

It is also noteworthy that the Supreme Court in *Norman v. Reed,* 502 U.S. 279 (1992), approved a signature requirement of 25,000 in suburban Cook County as consistent with *Socialist Workers Party. Id.* at 295 (noting that 25,000 is 2% of suburban voters and well within constitutional limits). If a 25,000 signature requirement is allowable as representing the upper limit within a political subdivision, then surely, if the focus is purely on the numbers, an 8,000 requirement is also acceptable. The *Norman* Court's treatment of *Socialist Workers Party* stands as further support against giving the case the expansive reading plaintiffs advocate.

An expansive reading of *Socialist Workers Party* is not the correct pathway. Rather, the often-applied test of *Burdick v. Takushi*, 504 U.S. 428 (1992), and *Anderson v. Celebreeze,* 460 U.S. 780 (1983) is controlling here. Under these cases, a balancing test is employed. Severe burdens on ballot access must be narrowly tailored and advance a compelling state interest. But reasonable, nondiscriminatory restrictions on ballot access which further legitimate state interests, will generally be upheld. *Burdick,* 504 U.S. at 434. The state has a legitimate interest in

3

insuring that candidates demonstrate some modicum of support before getting on the ballot, and petition requirements serve that interest. *Jenness v. Fortson,* 403 U.S. 431, 442 (1971).

The plaintiffs here had the usual 90 days under the Illinois Election Code to gather the requisite number of signatures, 10 ILCS 5/7-10(a), a time period explicitly approved by the Seventh Circuit. *See Stone v. Board of Election Commissioners for City of Chicago,* 750 F.3d 678, 684 (7th Cir. 2014). Numerous cases have upheld signature requirements as high as 5% of those voting in the last election, ten times higher than the 0.5% requirement here. *See Tripp v. Scholz,* 872 F.3d 857, 864-65 (7th Cir. 2017); *Stone,* 750 F.3d at 683-84 (7th Cir. 2014); *Libertarian Party v. Rednour,* 108 F.3d 768, 774-75 (7th Cir. 1997). To run for Mayor of Chicago, candidates need 12,500 signatures to get on the ballot, a fixed number rather than a percentage, and this number of course is considerably larger than the roughly 8,000 needed in this case to run for offices in Cook County or the Water Reclamation District, which are larger in population than the City of Chicago. The 12,500 number has withstood constitutional challenge. *Stone,* 750 F.3d at 683 ("Chicago's signature requirement is not a severe burden under the traditional framework.")

## CONCLUSION

Based on their statistical argument predicated on *Socialist Workers Party,* Plaintiffs have failed to state a plausible legal claim. Signature requirements for ballot access serve important state interests. The number of signatures challenged in this case is well within approved limits, and is not severe under existing law. We request that the complaint be dismissed.

Respectfully submitted,

**LISA MADIGAN**
Attorney General of Illinois

s/Thomas A. Ioppolo
Thomas A. Ioppolo
Assistant Attorneys General
General Law Bureau
100 West Randolph Street, 13th Floor
Chicago, IL 60601
(312) 814-7198
tioppolo@atg.state.il.us