# In the
# United States Court of Appeals
## For the Seventh Circuit



CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 18-2979

EDWARD ACEVEDO,

*Plaintiff-Appellant*,

v.

COOK COUNTY OFFICERS ELECTORAL BOARD, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-00293 — **Elaine E. Bucklo**, *Judge*.

_____

ARGUED MARCH 29, 2019 — DECIDED JUNE 5, 2019

_____

Before HAMILTON, BARRETT, and ST. EVE, *Circuit Judges*.

BARRETT, *Circuit Judge*. Before Edward Acevedo could appear on the 2018 Democratic primary ballot for Cook County Sheriff, he had to obtain a certain number of voter signatures on a nominating petition. He didn't meet the signature requirement, so he was kept off the ballot. He then sued the Chicago, Cook County, and Illinois electoral boards, arguing that the Cook County signature requirement is unconstitutional because it is more onerous than the signature requirement for

Case: 1:18-cv-00293 Document #: 42 Filed: 06/27/19 Page 2 of 8 PageID #:209
Case: 18-2979     Document: 00713442542     Filed: 06/27/2019     Pages: 8

2                                                                   No. 18-2979

statewide offices. According to Acevedo, the comparatively higher county requirement can survive only if it is narrowly tailored to advance a compelling state interest.

Acevedo is wrong. Strict scrutiny is not triggered by the existence of a less burdensome restriction—it is triggered only when the challenged regulation itself imposes a severe burden. Because Acevedo has not alleged that the burden imposed by the Cook County signature requirement is severe, the defendants need not show any justification for it beyond Illinois's interest in orderly and fair elections. That interest easily justifies the signature requirement here.

I.

Under Illinois law, potential candidates for public office must file a nominating petition to gain a place on a political party's primary ballot. That petition must include a certain number of signatures from voters in the jurisdiction where the candidate seeks election, and those signatures must be collected within a 90-day window. 10 ILCS 5/7-10. Candidates for statewide offices must collect 5,000 signatures. *Id.* 5/7-10(a). Candidates for countywide offices in Cook County must collect a number of signatures equal to 0.5% of the qualified voters of the candidate's party who voted in the most recent general election in Cook County. *Id.* 5/7-10(d)(1). According to this formula, Acevedo had to gather 8,236 valid signatures to appear on the 2018 Democratic primary ballot for Cook County Sheriff. He gathered only 5,654, so he was denied a place on the ballot.

Acevedo filed suit under 42 U.S.C. § 1983, alleging that this denial violated the First and Fourteenth Amendment

rights to freedom of association and equal protection. His argument relied on the distinction between the state and county signature requirements. According to Acevedo, the statewide requirement reflects Illinois's judgment that making candidates collect 5,000 signatures is sufficient to protect the state's interest in ballot management. Even so, the state demands 8,236 signatures from Democrats seeking countywide office in Cook County. Acevedo argued that Illinois could not impose this heightened burden unless doing so furthered a compelling state interest. Insisting that Illinois lacked any such interest, Acevedo sought a declaratory judgment pronouncing the Cook County requirement unconstitutional, as well as injunctive relief to bar enforcement of the requirement and compel the defendants to place his name on the Democratic primary ballot.

The district court held that Acevedo had failed to state a claim and dismissed the complaint. The court made clear that there is no bright-line rule requiring any county ballot requirement that is more stringent than a state requirement to be justified by a compelling state interest. Instead, the focus is on the burden imposed by the challenged regulation. And here, the court explained, Acevedo had failed to allege that requiring candidates to gather 8,236 signatures is a constitutionally significant burden.

II.

Though the election is over, Acevedo's claim is not moot because it is capable of repetition, yet evading review. This branch of the mootness doctrine requires that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be

Case: 1:18-cv-00293 Document #: 42 Filed: 06/27/19 Page 4 of 8 PageID #:211
Case: 18-2979 Document: 00713442542 Filed: 06/27/2019 Pages: 8

4 No. 18-2979

subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). These requirements are often met in ballot-access cases. *See, e.g.*, *Norman v. Reed*, 502 U.S. 279, 287–88 (1992); *Gjertsen v. Bd. of Election Comm'rs of City of Chi.*, 751 F.2d 199, 202 (7th Cir. 1984). Here, the timeline for collecting signatures to appear on a primary ballot is too short to fully litigate a challenge to the signature requirement. In light of this, and because Acevedo has expressed his intention to run for office in Cook County again, his challenge remains live.[1]

The constitutionality of a ballot-access restriction depends on "a practical assessment of the challenged scheme's justifications and effects." *Stone v. Bd. of Election Comm'rs for City of Chi.*, 750 F.3d 678, 681 (7th Cir. 2014). That assessment is governed by the two-step analysis that the Supreme Court announced in *Anderson v. Celebrezze*, 460 U.S. 780 (1983). We "first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Id.* at 789. We "then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule" and weigh these interests against the burdened rights. *Id.* In doing so, we look to the "legitimacy and strength" of the proffered interests, as well as "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* In *Burdick v. Takushi*, the Court emphasized that this test applies to *all* First and Fourteenth Amendment challenges to state election laws. 504 U.S. 428, 432–34 (1992).

---

[1] More specifically, Acevedo's requests for a declaratory judgment and an injunction prohibiting enforcement of the higher requirement remain live. His request that the court compel the defendants to place his name on the 2018 Democratic primary ballot is obviously moot.

No. 18-2979 5

Under this flexible *Anderson-Burdick* standard, the level of scrutiny with which we review a ballot-access restriction depends on the extent of its imposition: "the more severely it burdens constitutional rights, the more rigorous the inquiry into its justifications." *Libertarian Party of Illinois v. Scholz*, 872 F.3d 518, 523–24 (7th Cir. 2017). "Nondiscriminatory restrictions that impose only slight burdens are generally justified by the need for orderly and fair elections," whereas severe burdens must be "narrowly tailored to serve a compelling state interest." *Id.* at 524 (citation omitted). Because of this dichotomy, "[p]ractically speaking, much of the action takes place at the first stage of *Anderson*'s balancing inquiry." *Stone*, 750 F.3d at 681.

Cook County's signature requirement gave Acevedo 90 days to gather 8,362 signatures, an amount that would demonstrate that he had the support of 0.5% of the voters in the primary race that he sought to join. Acevedo has not alleged any facts supporting an inference that the burden imposed by this requirement is severe. Indeed, we have held that much more stringent requirements were not severe enough to necessitate heightened scrutiny. For example, we held in *Stone* that the requirement of gathering 12,500 signatures—2.5% of the votes cast in the previous election—in 90 days was not a severe burden on candidates who wanted to run in the Chicago mayoral race. 750 F.3d at 683. In *Tripp v. Scholz*, we approved a requirement that new or independent political parties obtain signatures from 5% of the voting population in order to place candidates on the general election ballot, holding that "the 5% signature requirement, standing alone, does not impose a severe burden on plaintiffs' constitutional rights." 872 F.3d 857, 864 (7th Cir. 2017). These cases make it hard for Acevedo to show that the 0.5% requirement

Case: 1:18-cv-00293 Document #: 42 Filed: 06/27/19 Page 6 of 8 PageID #:213
Case: 18-2979     Document: 00713442542     Filed: 06/27/2019     Pages: 8

6                                                              No. 18-2979

is anything but slight—which is perhaps why he doesn't try. It goes almost without saying that this slight burden is justified by Illinois's "relevant and legitimate state interests." *Tripp*, 872 F.3d at 864 (citation omitted); *see also Navarro v. Neal*, 716 F.3d 425, 431 (7th Cir. 2013) ("There is ample caselaw supporting the proposition that ballot access laws serve the important, interrelated goals of preventing voter confusion, blocking frivolous candidates from the ballot, and otherwise protecting the integrity of elections.").

Acevedo resists this straightforward analysis by arguing that a special rule applies here. Invoking *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979), *Norman v. Reed*, 502 U.S. 279 (1992), and *Gjersten v. Bd. of Election Comm'rs for City of Chi.*, 791 F.2d 472 (7th Cir. 1986), he argues that a state always triggers strict scrutiny when it imposes a higher ballot-access requirement for a countywide office than for a statewide office. Under these cases, Acevedo says, he does not have to show that the Cook County signature requirement severely burdens him in order to trigger strict scrutiny. He just has to show that the burden is heavier than it would be if he were running for statewide office.

Acevedo is mistaken. We have stressed before that "[w]hat is ultimately important is not the absolute or relative number of signatures required but whether a 'reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot.'" *Stone*, 750 F.3d at 682 (*quoting Bowe v. Bd. of Election Comm'rs of City of Chi.*, 614 F.2d 1147, 1152 (7th Cir. 1980)). If the burden imposed is slight, *Anderson* and *Burdick* make clear that no justification beyond the state's interest in orderly and fair elections is necessary—even if less burdensome alternatives are available.

No. 18-2979                                                        7

The cases that Acevedo invokes as support—*Socialist Workers Party*, *Norman*, and *Gjersten*—are not to the contrary. To begin with, even if those cases once prescribed an alternate analysis for this specific type of comparative challenge, they were all decided before *Burdick* clarified that the *Anderson* test applies to all First and Fourteenth Amendment challenges to state election regulations. *See Burdick*, 504 U.S. at 434. But in any event, those cases are consistent with the *Anderson-Burdick* analysis.

*Socialist Workers Party*, *Norman*, and *Gjersten* did not apply strict scrutiny simply because a less burdensome regulation existed. They applied strict scrutiny because each of the challenged regulations imposed a severe burden in its own right. *See Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (explaining that the Court in *Socialist Workers Party* found the challenged burden to be severe); *Norman*, 502 U.S. at 288–89, 293–94 (citing *Anderson* and *Socialist Workers Party* for the proposition that severe restrictions require narrow tailoring and then rejecting part of the challenged requirement because it wasn't narrowly tailored); *Gjersten*, 791 F.2d at 474 (rejecting a facially burdensome 10% signature requirement).[2] And when a regulation imposes a severe burden, a court must consider whether the state could use less burdensome alternatives to achieve the same goal. *That* is why the existence of less stringent regulations was important in those cases—it showed that the more stringent regulation at issue was not the narrowest necessary to protect the state's interest in managing elections.

---

[2] We suggested in *Lee v. Keith*, 463 F.3d 763, 771 (7th Cir. 2006), that a 5% signature requirement marks the "outer limit" of burdens that don't warrant strict scrutiny. The requirement in *Gjersten* was twice that.

Case: 1:18-cv-00293 Document #: 42 Filed: 06/27/19 Page 8 of 8 PageID #:215
Case: 18-2979     Document: 00713442542     Filed: 06/27/2019     Pages: 8

8                                                              No. 18-2979

*See Illinois Workers Party*, 440 U.S. at 186–87; *Norman*, 502 U.S. at 294; *Gjersten*, 791 F.2d at 477.

The defendants in *Socialist Workers Party*, *Norman*, and *Gjersten* lost because they couldn't show that the severe burdens that they placed on ballot access were narrowly tailored. Because the burden here is slight, it is not subject to the same level of scrutiny. The district court correctly concluded that the Cook County signature requirement is justified by Illinois's interest in orderly and fair elections.

                                                                AFFIRMED.